# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 12, 2021

Lyle W. Cayce
Clerk

No. 19-51012

Bitco General Insurance Corporation, formerly known as Bituminous Casualty Corporation,

*Plaintiff—Appellee*,

*versus*

Monroe Guaranty Insurance Company, A Member of the FCCI Insurance Group,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-325

Before Higginbotham, Jones, and Higginson, *Circuit Judges*.
Per Curiam:*

In "the summer of 2014," a farm hired 5D Drilling & Pump Service Inc. ("5D") to drill a 3600-foot-deep commercial irrigation well through the Edwards Aquifer.  In June 2016, the farm sued 5D for breach of contract and

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-51012

negligence after 5D purportedly drilled the well with "unacceptable deviation" and then abandoned the well after it "stuck" the drill bit in the bore hole. 5D notified two insurance companies claiming they both had a duty to defend it against the suit. One of the companies refused, claiming it had no duty to defend because the alleged property damage occurred, at least in relevant part, outside the policy's coverage period. The policy provided coverage from October 6, 2015 to October 6, 2016, and, according to the parties' stipulation, the drill bit became stuck "in or around November 2014."

Key to deciding this case is whether this court, applying Texas law, can consider extrinsic evidence—the stipulated date the drill bit became stuck—when deciding whether a duty to defend exists. This is an important and determinative question of Texas law as to which there is no controlling Texas Supreme Court precedent. Thus, we certify the question to that court.

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO. ART. 5, §3-C OF THE TEXAS CONSTITUTION AND RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE.**

**TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:**

## I. STYLE OF THE CASE

The style of the case is BITCO General Insurance Corporation ("BITCO"), Plaintiff–Appellee, v. Monroe Guaranty Insurance Company ("Monroe"), Defendant–Appellant, in the United States Court of Appeals

No. 19-51012

for the Fifth Circuit, on appeal from the judgment of the United States District Court for the Western District of Texas. Federal jurisdiction over the issues presented in this case is based on 28 U.S.C. § 1332.

## II. STATEMENT OF THE FACTS

Both parties to the present suit insured 5D for different coverage periods. Monroe's policy provided coverage for certain property damage that occurred during its policy period, October 6, 2015 to October 6, 2016. The policy did not, however, cover any "continuation, change or resumption" of property damage "during or after the policy period" that was known "prior to the policy period" "in whole or in part."[1]

In "the summer of 2014," David Jones, doing business as J&B Farms of Texas, hired 5D to drill a 3600-foot-deep commercial irrigation well through the Edwards Aquifer. In June 2016, Jones sued 5D and its President for breach of contract and negligence. Jones alleged that 5D commenced drilling and "reached the Edwards Aquifer at approximately 3,500 [feet]," but "while negligently drilling 'stuck' the drilling bit in the bore hole, rendering the well practically useless for its intended/contracted for purpose." 5D then "failed and refused to plug the well, retrieve the drill bit, and drill a new well." Jones asserted that 5D drilled the well "with unacceptable deviation" and then "abandon[ed]" the well.[2] Importantly,

---

[1] The relevant portion of the agreement states, more fully, that the "insurance applies . . . only if . . . [p]rior to the policy period, no insured listed under Paragraph 1[] of Section II – Who Is An Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part. If such a listed insured or authorized 'employee' knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred, then any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period."

[2] Jones further alleged that 5D "failed to case the well through the Del Rio clay, allowing detritus to slough off the clay, falling down the bore and filling up the well." He

No. 19-51012

BITCO and Monroe stipulated that the drill bit was stuck in the bore hole "during drilling" "in or around November 2014."

5D notified BITCO and Monroe of Jones's lawsuit and demanded that both insurers provide a defense. BITCO ultimately agreed to do so but Monroe refused, arguing, *inter alia*, that it had no duty to defend 5D because the alleged property damage fell outside the relevant policy period.[3] BITCO sought a declaratory judgment that Monroe owed a duty to defend 5D in the lawsuit. Both insurers moved for summary judgment, and the district court adopted the magistrate judge's recommendation and granted summary judgment to BITCO. Monroe timely appealed to this court.

## III. DISCUSSION

Texas law governs this diversity case. On questions of Texas law, we first consider the final decisions of the Supreme Court of Texas. When no decision answers a given question, we may certify that question to the Texas Supreme Court. *Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014). The Texas Constitution—as well as the Texas Rules of Appellate Procedure—permit that court to "answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent." TEX. CONST. art. V, § 3-c(a); TEX. R. APP. P. 58.1. The issues in this case present just such a question regarding the proper use of extrinsic evidence to determine whether a duty to defend exists.

---

also alleged that 5D's actions damaged "the aquifer" and "the free flow of water in the aquifer." Finally, Jones alleged that 5D failed to notify the appropriate state regulatory authorities. The pleadings do not provide dates for any of the alleged negligent acts or property damage.

[3] Jones's lawsuit subsequently settled.

No. 19-51012

The eight-corners rule is considered a "settled feature of Texas law." *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 499 (Tex. 2020). Under that rule, whether an insurance company has a duty to defend a given suit should be determined solely by comparing the four-corners of the pleadings with the four-corners of the insurance agreement.[4] But this rule is not absolute under Texas law. Some Texas courts, as well as the Fifth Circuit under our well-established *Erie*-guess,[5] make narrow exceptions to the rule and consider extrinsic evidence under certain circumstances. *See id.* at 496 n.4 (collecting cases of Texas courts following this court's so-called *Northfield* exception or applying something similar). And the Texas Supreme Court recently articulated its first explicit exception to the eight-corners rule where "there is conclusive evidence that groundless, false, or fraudulent claims against the insured have been manipulated by the insured's own hands in order to secure a defense and coverage where they would not otherwise exist." *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 882 (Tex. 2020). Nevertheless, recognizing that the "varied circumstances under which such arguments for the consideration of evidence may arise are beyond imagination," the Texas Supreme Court has not definitively ruled on every possible exception. *Richards*, 597 S.W.3d at 500 (considering a certified question from the Fifth Circuit, rejecting a "policy-language exception" to the eight-corners rule, but expressly declining to comment on the so-called *Northfield* exception and "reserv[ing] comment" on other possible exceptions).

---

[4] "Under the eight-corners or complaint-allegation rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) (citations omitted).

[5] *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004).

No. 19-51012

Monroe asks this court to consider the extrinsic evidence of a stipulated date related to the incident to determine its duty to defend this suit. BITCO counters that such evidence cannot be considered under Texas's eight-corners rule and, even if it were considered, it does not establish that Monroe had no duty to defend.

This court held in *Northfield* that we will consider extrinsic evidence if two requirements are met: (1) "when it is initially impossible to discern whether coverage is potentially implicated," and (2) "when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004). Although the *Northfield* exception has not been adopted by the Texas Supreme Court, it has been favorably cited. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308–09 (Tex. 2006) (favorably describing this court's two-part test and concluding the facts of that case did not satisfy it); *see Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 475–76 (5th Cir. 2009) (recognizing this favorable treatment, applying the test, and considering extrinsic evidence); *see also Richards*, 597 S.W.3d at 496–97 (Texas Supreme Court recognizing that it "has never had occasion to address" the exception but acknowledging "its widespread use").

Whether Texas law permits courts to consider the undisputed date of an incident as relevant to determine whether a duty to defend exists is an application of the *Northfield* exception. Receiving a definitive answer to this question is important because ascertaining the date of an occurrence is a frequently encountered "gap" in third party pleadings. Tactically, the omitted date can be key to the question of the duty to defend the underlying suit. *See* Michael Menapace, *Going beyond the Four Corners to Deny a Defense: A Critique of Section 13(3) of the Restatement of Liability Insurance*, 53 TORT

TRIAL & INS. PRAC. L.J. 795, 809 (2018); *see also Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 194 (5th Cir. 1998) ("But, where the basis for the refusal to defend is that the events giving rise to the suit are *outside the coverage* of the insurance policy, facts extrinsic to the claimant's petition *may be used* to determine whether a duty to defend exists." (quoting *Gonzales v. American States Ins. Co. of Tex.*, 628 S.W.2d 184, 187 (Tex. App. 1982)) (emphasis in original)).

Before the new exception was articulated in *Loya*, this court and others applied Texas law to permit extrinsic evidence to clarify the date of an occurrence under certain circumstances. *See, e.g.*, *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 550 (5th Cir. 2004) (looking to extrinsic evidence, the parties' stipulation that some polluting spills occurred after a certain date that overlapped with coverage, to conclude that there was a duty to defend); *cf. Ooida*, 579 F.3d at 476 (where an applicable exclusion depended on tandem-driving a commercial motor vehicle, the panel applied *Northfield* and considered extrinsic evidence to negate duty to defend).[6]

---

[6] *See also Century Sur. Co. v. Dewey Bellows Operating Co.*, No. H-08-1901, 2009 WL 2900769, at *8 (S.D. Tex. Sept. 2, 2009) (unpublished) (concluding that an exclusion applied and no duty to defend existed after looking to extrinsic evidence found in a counterclaim because "the underlying petition does not contain facts that allow the court to determine when Dewey knew of an 'occurrence' and when it reported that 'occurrence[]'"); *Boss Mgmt. Serv., Inc. v. Acceptance Ins. Co.*, No. H-06-2397, 2007 WL 2752700, at *11–12 (S.D. Tex. Sept. 17, 2007) (unpublished) (considering extrinsic "occupancy certificates" to determine the "earliest date after which the damage appeared," where the underlying pleadings vaguely alleged damage after the relevant buildings were "opened for occupancy" or after "completion of the Project," and concluding that coverage was "potentially implicated").

On the other hand, BITCO points to three, arguably factually distinguishable cases, where courts have found temporally imprecise pleadings sufficient to implicate the duty to defend. *See Landstar Homes Dallas, Ltd. v. Mid-Continent Cas. Co.*, No. 3:10–CV–0014–K, 2010 WL 5071688, at *1, *4–5 (N.D. Tex. Dec. 13, 2010) (unpublished) (pleadings asserting relevant activity "as early as May 23, 2001" "potentially" stated a claim for property damage where the relevant policy periods ranged from May 3, 2001 to May 3,

No. 19-51012

Commentators have weighed in favorably to considering extrinsic evidence in limited circumstances. *See* STEVEN PLITT, ET. AL., COUCH ON INSURANCE § 200:22 (3d ed. 2020) ("In determining the existence of a duty to defend, it has been held that extrinsic facts may be considered where the complaint is ambiguous or inadequate, but a court has no obligation to examine evidence extrinsic in determining whether the liability insurer has a duty to defend the underlying action where the allegations of the complaint are not ambiguous." (citing cases applying Texas law)); 1 NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE 11A.13 (2020) ("In situations, however, where the complaint is silent as to certain facts that may be determinative of coverage issues . . . insurers often can rely on extrinsic evidence to 'fill in the gaps,' at least in the context of a declaratory judgment action." (citing *Northfield*, 363 F.3d at 529–31 (applying Texas law) and *W. Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 313 (5th Cir. 1993) (applying Texas law))).

At bottom, the present case implicates two related questions, which we certify in the following section: Whether the *Northfield* two-part exception is permissible under Texas law and, if so, whether it permits a court to consider the date of an occurrence under the circumstances of this case.

---

2007); *Employers Mut. Cas. Co. v. N. Ins. Co.*, No. 3:08–CV–1498–G, 2010 WL 850243, at *4 (N.D. Tex. Mar. 11, 2010) (unpublished) (pleadings with the phrase "[s]hortly thereafter" in reference to August 1, 1999 were sufficiently clear to fall within a policy period ending on November 1, 1999); *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 292 S.W.3d 48, 58–59 (Tex. App. Jul. 6, 2006), *rev'd in part on other grounds*, 279 S.W.3d 650 (Tex. 2009) (where the relevant policies contained "'continuous or repeated exposure' language," "each insurer would have a duty to defend against any claim that alleges potential property damage from a continuous or repeated exposure falling within a relevant policy period").

No. 19-51012

## IV.  QUESTIONS CERTIFIED

We certify the following questions of state law to the Supreme Court of Texas:

1.  Is the exception to the eight-corners rule articulated in *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004), permissible under Texas law?

2.  When applying such an exception, may a court consider extrinsic evidence of the date of an occurrence when (1) it is initially impossible to discern whether a duty to defend potentially exists from the eight-corners of the policy and pleadings alone; (2) the date goes solely to the issue of coverage and does not overlap with the merits of liability; and (3) the date does not engage the truth or falsity of any facts alleged in the third party pleadings?

We disclaim any intention or desire that the Court confine its reply to the precise form or scope of the questions certified.  The answers provided will determine the issues on appeal in this case.  The record in this case and copies of the parties' briefs are transmitted herewith.

The panel retains cognizance of the appeal in this case pending response from the Supreme Court of Texas and hereby certifies the above questions of law.

QUESTIONS CERTIFIED.



**A True Copy**
**Certified Mar 12, 2021**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**